[Civ. No. 7717. First Appellate District, Division Two.—February 5, 1931.]

JOHN H. MacCORKELL, Respondent, v. FRANK A. WILLIAMS, Appellant.

Joe Crider, Jr., for Appellant.

Henry P. Goodwin and Burton Briggs Crane for Respondent.

BURROUGHS, J., *pro tem.*—This is a suit for damages for personal injuries. The cause was tried by the court without a jury. Judgment was entered in favor of the plaintiff for the sum of $5,732.45. The defendant has appealed from said judgment. The appeal is based upon the ground that the findings of the trial court, as follows: That preceding and at the time of the accident the plaintiff was exercising reasonable and ordinary care for his own safety; that he was not guilty of contributory negligence; that the accident from which plantiff's injuries resulted was the direct result of defendant's negligence and that the injuries sustained by the plaintiff were not the result of an inevitable or unavoidable accident so far as defendant is or was concerned, are each and every one without support in the evidence.

Colorado Boulevard is a paved highway about sixty feet wide between the curb lines and runs easterly and westerly through the city of Glendale in the county of Los Angeles. Griswold Street is a public highway in said city about thirty-five feet wide between curbs and it intersects Colorado Boulevard from the south but does not continue north of said Colorado Boulevard. At the time of the accident which resulted in plaintiff's injuries, the plaintiff John H. Mac-Corkell was crossing Colorado Boulevard from the north curb to the south curb, headed for some point in Griswold Street. Somewhere between the center and the south curb of said boulevard plaintiff came into collision with the front end of a Cadillac automobile driven by the defendant Frank A. Williams, and was seriously injured.

The evidence is conflicting on many material issues. Under the authorities the duty of resolving this conflict rested with the trial court and the trial court having decided such conflict against the defendant, this court is bound thereby. (*Anderson* v. *Los Angeles Transfer Co.,* 170 Cal. 66 [148 Pac. 212].) Reviewing the evidence in accordance with the foregoing rule, we shall state sufficient thereof to sustain the findings of the court, if there be such evidence in the record. John H. MacCorkell testified that he started to cross Colorado Boulevard from the north curb thereof to a point on the westerly line of the sidewalk on Griswold Street. Before stepping from the curb he looked both ways for traffic; that automobile traffic was coming toward him from both directions; that the nearest car from the east was 75 to 100 feet away; that the nearest car approaching from the west was from 100 to 150 feet away; that when he was a quarter of the way across he again looked east and west; that when he reached the middle of the street he observed the traffic both east and west on the boulevard; that he remembered hearing automobile brakes squeak; that he glanced toward the east and saw an automobile coming from that direction about forty or fifty feet away; that he raised his right hand and knew nothing more until he recovered consciousness in the hospital a few days later; that he did not hear any automobile horn or warning sound. It also appears that plaintiff was on a pedestrian crossing. B. C. Gorrill testified that he was driving his car in a westerly direction on the north side of Colorado Boulevard; that he

was driving at approximately twenty miles an hour; that when he reached the intersection of Griswold Street with Colorado Boulevard he had slowed down to about ten miles an hour; that he started to turn into Griswold Street; that when the witness first saw the plaintiff, the plaintiff was about four feet north of the east and west center line of Colorado Boulevard and approximately on a line between the northern curb of Colorado Boulevard and the eastern curb of Griswold Street; at that time the witness' car was about forty feet east of plaintiff on Colorado Boulevard; that the witness continued traveling westerly until he was about ten feet east of the plaintiff; that from there he turned his car about three feet northerly toward the north curb line of the boulevard and stopped; that in slowing down his car the brakes squeaked; that at that point he first saw the Cadillac car of the defendant about forty feet west of the center of the intersection of the boulevard and Griswold Street, between the south curb line and the center of the boulevard and traveling at about thirty miles an hour; that the driver's head "was turned somewhat to the south"; from then on until the accident the witness did not see him turn his head in the direction he was going; that from the point where the witness first saw the plaintiff, the latter was walking south across the boulevard and continued until he was about the middle of the south half of the boulevard and on a line with the easterly curb line of Griswold Street where he was struck by the defendant's car; that from the point where the witness saw him to the point where he was struck by the automobile, plaintiff was traveling at a fast walk; that when the brakes of the car in which the witness was driving squeaked plaintiff jumped forward two or two and one-half feet; that immediately after the accident several people were near the car, among them the defendant and the defendant said, "I did not see him until I hit him." Later in the day defendant told the witness that he thought he, the defendant, was driving twenty-eight or thirty miles an hour; that as shown by skid marks on the pavement, the defendant's automobile skidded a distance of fifteen feet, then a space of ten feet in which there were no marks, and then the car skidded six feet more; that these marks started at the place where defendant's car struck the plaintiff; that the witness stopped his car so that the car of the defendant

could pass him before he crossed the street; that he was thirty or thirty-five feet away from plaintiff when the latter jumped; that after that plaintiff continued across the street; that he looked west, made a swing back and threw up his right arm; that the defendant's car was about ten or fifteen feet to the right of plaintiff, after that the Cadillac hit him. Ray H. Smith testified that at the time of the accident he was on the east sidewalk of Griswold Street about twenty feet from the intersection of that street with the boulevard and walking north; that he saw witness Gorrill's car going west on the boulevard and he was just making the turn to go south on Griswold Street; that the attention of the witness was drawn by the squeaking of the brakes just before Gorrill started to make the turn; that he looked up and saw the plaintiff approximately in the center of the street and about four feet north thereof on a line with the westerly curb line of Griswold Street, the brakes squeaked, plaintiff glanced around and jumped about three or four feet and went on south at a fast walk. The witness saw the car of the defendant coming at a distance, it was about thirty or forty feet from plaintiff; that the plaintiff stopped, hesitated a second and threw up his hand and about that time the car hit him. The witness did not hear any horn blow; the defendant's car was traveling about thirty miles an hour; that traveling at the rate of twenty miles an hour defendant's car can be stopped in twenty feet; that by skidding the wheels it can be stopped between fifteen or twenty feet. After the impact with the plaintiff's body the car continued easterly on the boulevard, veering to the south and came to a stop about twenty feet east of Griswold Street. This witness also testified to the skid marks on the pavement. It also appears from the evidence that the plaintiff was carried on the front bumper and fender of defendant's car from the point of the impact to where the automobile stopped and he was found lying on the pavement at that point. The witness Smith continued testifying. He stated that he heard someone say in the presence of the driver of the Cadillac car, "I didn't see him until I hit him"; that he did not know who said it. On cross-examination this witness said that the plaintiff was going fast up to almost the time of the accident, when he glanced around and saw the car coming and stopped; when he stopped he was right

in front of defendant's car. Maude M. MacCorkell, the wife of the plaintiff, testified that at the Glendale hospital she had a conversation with the defendant and he said "I didn't see your husband until I hit him" and also said that he was going between twenty-eight and thirty miles an hour. These statements were made the day of the accident. Guy B. Mc-Christian and Ethel McChristian testified that in a conversation held with the defendant the evening after the accident the defendant repeated the above statements. At another time the same remarks, according to the testimony of Sam MacCorkell, were made to him by the defendant. It also appears that the defendant was familiar with Colorado Boulevard and Griswold Street and had driven on the boulevard many times. The defendant and some of his witnesses testified that the former was driving his car at about twenty miles an hour; that the plaintiff jumped when the brakes on Gorrill's car squeaked; that he jumped back and forth in front of Gorrill's car and then ran directly across the boulevard in front of the defendant's car; that the defendant was looking in the direction he was traveling and when he saw plaintiff he endeavored to stop his car; that when plaintiff ran in front of his car he was but a few feet away. Evidence was also introduced by the defendant that his car, traveling at twenty miles an hour could not be stopped by the application of the brakes in less than thirty-five to forty feet. There is a conflict as to the exact location of the plaintiff at the time the automobile struck him, but under the evidence we deem that an immaterial matter.

From the evidence above set forth does it appear that the defendant was guilty of such negligence as constituted the proximate cause of plaintiff's injuries? We think that it is clear that it does. The evidence that he was driving his car at a speed of about thirty miles an hour while approaching a pedestrian crossing and that he had driven over said street many times and was familiar therewith; that he was not looking in the direction in which he was driving; that he made the remark that he did not see the plaintiff until he hit him and that he was driving at a speed of about twenty-eight or thirty miles an hour is sufficient to justify the finding of the trial court that the defendant was so negligent. Also it is sufficient to justify the

further finding that so far as the defendant was concerned the accident was not unavoidable.

It is also contended that the plaintiff was guilty of contributory negligence. On this subject the evidence discloses that before the plaintiff stepped from the curb on the boulevard, he looked in both directions for traffic; that he was traveling within the limits of the pedestrian crossing, where he had a legal right to be; that from time to time he looked in both directions for approaching automobiles; that as he reached approximately the center of the boulevard he again looked west; at this time he had one foot forward and as he looked up, he swung back to his other foot and threw up his hand but was struck by the defendant's car. It is true there is evidence for the defendant that at the time the brakes on Gorrill's car squeaked the plaintiff jumped and then without looking in either direction broke into a run and went directly in front of defendant's car. This evidence however merely raised a conflict.

The case of *Rignell* v. *Font*, 90 Cal. App. 731 [266 Pac. 588, 590], and the cases there cited, are authority for a number of the points involved in this action. It is held in said case "the question of the existence of contributory negligence is ordinarily one of fact to be determined by the jury". "It cannot reasonably be said that before one may lawfully attempt to cross a busy thoroughfare, in the absence of an ordinance to the contrary, he must wait upon the curbing until he can cross the entire street ahead of all vehicles which may be in sight." "Neither vehicles nor pedestrians ordinarily have a superior right to the use of a public street, but, upon the contrary, each must exercise the privilege with the due regard to the rights of the other." Further, that in the exercise of ordinary care a pedestrian may rely upon the expectation that automobiles will conform to the customary rules of traffic. We deem it unnecessary to cite further authorities.

We are satisfied that the findings are sustained by the evidence and the judgment should be affirmed. It is so ordered.

Nourse, P. J., and Sturtevant, J., concurred.