[Civ. No. 6467. Third Appellate District.—March 1, 1941.]

B. L. BLACKMORE et al., Respondents, v. MERVYN BRENNAN et al., Appellants.

Honey & Mayall for Appellants.

Gumpert & Mazzera and C. H. Hogan for Respondents.

THOMPSON, J.—The defendants have appealed from a judgment of $3,500 damages for the death of Harold Blackmore, son of the plaintiffs, which occurred as the result of an automobile casualty.

At 6 o'clock on the evening of July 15, 1938, Mervyn Brennan, who was then 19 years of age, was driving his father's automobile southerly along Van Allen Road near Escalon in San Joaquin County, toward his home three miles south of the intersection of that road with Lone Tree Road. The last-mentioned highway extends east and west, intersecting

Van Allen Road at a right angle. Each of these roadways, which are about fifty feet in width, is paved along the central portion for a width of only about twelve feet. A fence encloses a ranch at the northwest corner of the intersection of those roads. On that corner there is a large barn which extends southerly to a point within about thirty feet of the northerly line of Lone Tree Road.

At the time mentioned, Harold Blackmore, the son of plaintiffs, who was 27 years of age, was engaged in driving his cut-down Chevrolet roadster easterly along Lone Tree Road. As he reached a point about 135 feet westerly from the intersection of the two roads, Mr. Gottleib Mayer, the owner of the ranch on the north side of the road, opened a gate and drove a band of some thirty cows out upon the highway on the way to a corral. The cattle separated and scattered along the highway in the vicinity of the gate. Mr. Mayer said that when Harold Blackmore approached the cattle he reduced the speed of his car to about ten or fifteen miles an hour, and slowly made his way along the extreme southerly side of the road. It is evident that he did not greatly accelerate the speed of his machine before reaching the intersection of the roads, for the distance was short and he was hindered by the presence of the cattle. At that point his view of the Van Allen Road was obstructed by the intervening barn.

As Mervyn Brennan approached the intersection of the roads, traveling south, he was driving his machine at a rate of forty miles an hour. He claimed to have reduced his speed, before reaching the intersection, to a rate of twenty or twenty-five miles an hour. His view of Lone Tree Road, westerly of the intersection, was obscured by the barn until he reached a point about twenty-five or thirty feet from the northern line of that roadway. He asserted that he did not see the machine of Harold Blackmore until the Chevrolet car entered the intersection running at about the rate of forty miles an hour. He claimed to have immediately applied his brakes with full force. He admitted that he could stop his machine within a distance of twelve or fifteen feet when it was running twenty or twenty-five miles an hour. His automobile struck the Chevrolet roadster at the southeasterly portion of the intersection, overturning it and killing Harold Blackmore. It is evident that the defendant Mervyn Brennan, must have been driving his machine faster than twenty-five miles an hour, for he applied his brakes with full force and failed to stop.

The Chevrolet car was violently shoved a considerable distance and practically demolished. A highway patrolman who arrived at the scene within two hours after the accident occurred, observed and measured skid-marks made by the defendants' machine, extending northerly thirty-nine feet from the place of the accident. The appellants do not contend that the evidence is insufficient to support the finding of negligence or the amount of the judgment.

The cause was tried by the court sitting with a jury. The jury returned a verdict in favor of the plaintiffs for the sum of $2,500. The defendants moved for a new trial on all statutory grounds. The court made an order that a new trial would be granted on the grounds of insufficiency of the evidence, and inadequacy of the judgment, unless the defendants consented in writing within ten days therefrom to increasing the judgment to the sum of $3,500. The defendants consented in writing to that increase of judgment. The motion for new trial was thereupon formally denied. From the judgment as modified and increased the defendants appealed.

The appellants contend that the court committed reversible error in giving to the jury and refusing to give certain instructions, and that the court was without authority to determine the motion for new trial conditioned upon the defendants consenting to an increase of the amount of damages awarded by the jury, since that procedure amounted to a denial of their constitutional right to a trial by jury as provided in article I, section 7, of the Constitution of California.

The appellants assert that the court erred in giving to the jury plaintiffs' instruction number 2, which appears to be a fair statement of the principle that it may be presumed "a person takes ordinary care of his own concerns", as the statute declares in subdivision 4 of section 1963 of the Code of Civil Procedure. That challenged instruction stated that the law presumes Harold Blackmore, in driving his automobile at the time of the accident, exercised due care for his own safety, and unless that presumption was overcome by competent evidence it should be considered in determining whether the deceased was guilty of contributory negligence. The instruction concluded with the further statement that if the presumption was not overcome by evidence it must be assumed the deceased exercised ordinary care in his operation of the machine at that time, under which circumstances he would not be guilty of contributory negligence.

It is true that Mervyn Brennan testified that the deceased drove into the intersection at a rate of forty miles an hour. That is substantially the only evidence of contributory negligence adduced at the trial to overcome the presumption of due care on the part of the deceased for his own safety. Evidently the jury did not believe that statement. The testimony of Mr. Mayer, and other circumstances, seem to refute that statement. But the jury had the sole right to determine the credibility of witnesses and the weight and sufficiency of the evidence on that subject. It is said in 10 California Jurisprudence, at page 747, regarding the determination of a disputable presumption, that:

"Where, however, it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proven."

The jury was not told in this case that it must assume from the presumption of due care that the deceased was free from contributory negligence. All that the court said in that instruction was that *in the absence of evidence overcoming the presumption,* it should prevail and the deceased, in that event, would be deemed to be free from contributory negligence. In other words, the jury was told, in effect, that it must determine whether sufficient evidence had been adduced to overcome that presumption. That is a correct statement of the law as we understand it. Numerous cases sustain that construction of section 1963, subdivision 4, of the Code of Civil Procedure. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82, 91 [239 Pac. 709, 41 A. L. R. 1027]; *Barrett* v. *Harman,* 115 Cal. App. 283, 286 [1 Pac. (2d) 458]; *Woodman* v. *Hemet Union High School Dist.,* 136 Cal. App. 544 [29 Pac. (2d) 257]; *Killough* v. *Lee,* 4 Cal. App. (2d) 309 [40 Pac. (2d) 897]; *Lahey* v. *Southern Pac. Co.,* 16 Cal. App. (2d) 652 [61 Pac. (2d) 461].)

The jury was elsewhere fully instructed on the subject of contributory negligence. It was emphatically told that if the deceased was guilty of negligence which contributed in the slightest degree to the accident, the plaintiffs could not recover judgment regardless of how serious the negligence of the defendant Mervyn Brennan might be. In plaintiffs' instruction number 1, the term "contributory negligence" was defined. In defendants' instruction number 3, the jury was told that the same duties, responsibilities and necessity of exercising ordinary care in operating their machines at the

time of the accident were imposed by the law equally upon both parties involved in the casualty. The terms "negli-. gence", "ordinary care" and "proximate cause of injury" were explicitly defined. In connection with the foregoing challenged instruction the court also charged the jury that:

"'Contributory negligence is a defense. If such negligence is proved to have proximately contributed to plaintiff's injuries in the slightest degree, it will defeat a recovery on the part of plaintiff. Contributory negligence presupposes that the plaintiff did not exercise ordinary care for his own safety, and that his failure so to do proximately contributed to his own injuries. It is an affirmative defense and must be proved by a preponderance of the evidence, unless it can be shown or inferred from the evidence given in support of plaintiff's case."

We are of the opinion the foregoing "due care" instruction was neither erroneous nor prejudicial. Certainly it does not constitute reversible error.

█ The following instruction which was given to the jury at the request of the plaintiff is assigned as error for the reason that it fails to include the condition that the rule announced therein depends on the plaintiff's freedom from contributory negligence. That challenged instruction reads:

"You are instructed that the deceased, Harold Blackmore, as he drove his automobile into the intersection where the accident occurred, had a right under the law to assume until the contrary appeared, that he was not exposed to danger *which could come to him only by and through the violation of law on the part of another,* and if he acted upon such assumption, he was not guilty of contributory negligence *merely by reason of the fact that he did so."*

The jury was also charged in the very next instruction that:

"It was the duty of Harold Blackmore, while driving on Lone Tree Road, to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such a lookout, or failure to see what may be readily seen if the driver is looking, would constitute negligence as a matter of law."

The jury was further instructed, as we have previously said, that proof of negligence of the deceased which "contributed to plaintiff's injuries in the slightest degree" would defeat his

right to recover damages. In that same instruction it was further said that contributory negligence consisted of any failure on the part of the deceased to exercise ordinary care for his own safety.

We are of the opinion the instruction previously criticised is not prejudicial because it omits the element of contributory negligence on the part of the deceased. It was immediately followed by other instructions which supply that element. The jury could, therefore, not have been misled in that regard. The instruction is not inconsistent with others on that subject. It is entirely consistent with them. It should be read in connection with the other instructions on that subject. It clearly informed the jury that the deceased had a right to assume he could cross that intersection without anticipating danger *caused solely by violation of the law* on the part of some other motorist. Certainly, if the death of Harold Blackmore was *caused solely and only* as a result of the violation of law by Mervyn Brennan, it absolutely excludes the possibility of any negligence of the deceased contributing to his death. That instruction is therefore not inconsistent with the other ones which were given on that subject. We are of the opinion the jury could not have been misled thereby.

In the case of *Schatte* v. *Maurice,* 116 Cal. App. 161 [2 Pac. (2d) 489], it was held that the use of the word ''sole'' with relation to the cause of injuries which were sustained by the plaintiff was clear and explicit enough so that it could not be misunderstood to refer to something else not included in the charge. The court there said that the use of the term ''sole cause of injuries'' necessarily excluded the possibility of the presence of contributory negligence on the part of the plaintiff.

The instruction merely states that the deceased had a right to assume that the defendant would not place him in danger by violating the law of the highway, and that the deceased would not be guilty of contributory negligence solely because he assumed the defendant would obey the law. Clearly that instruction does not infer that the deceased might not be guilty of contributory negligence for some other reason which might appear in evidence. All that the case of *McPherson* v. *Walling,* 58 Cal. App. 563 [209 Pac. 209], relied upon by appellant herein, determines is found at page 568 of the opinion to the effect that an instruction is erroneous which infers that ''conduct of the plaintiff *which amounts to contributory negli-*

*gence* may become free from negligence because of any act of neglect on the part of defendant''. Applying that statement to the present case, it may not be said that one is guilty of negligence merely because he assumes, as every man has a right to assume, that others will obey the law. It is true that in spite of that particular assumption one might nevertheless be guilty of contributory negligence in doing or failing to perform other acts which a reasonably prudent person would do or omit under similar circumstances. But the jury was elsewhere fully instructed on that phase of the case. It was not necessary for the plaintiffs to include in that particular instruction all of the conditions under which the deceased might rely on the assumption that the defendant would obey the law. The condition of his freedom from negligence was properly included in other instructions. That declaration was elsewhere fully covered.

It is a well-established principle that the entire charge to a jury is to be read as a whole in determining whether the jury has been fully and fairly instructed. A myriad of authorities supports that doctrine. It has been frequently held that the omission from an instruction on a certain subject of proper separate conditions or legal principles involved in the issues of a case, such as contributory negligence, proximate cause of injury, etc., does not constitute cause for reversal of the judgment, where the jury is elsewhere adequately instructed in the charge upon those omitted principles. (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237] ; *American Marine Paint Co.* v. *Nyno Line, Inc.*, 70 Cal. App. 415 [233 Pac. 366] ; *Burr* v. *Damarel,* 24 Cal. App. (2d) 622 [75 Pac. (2d) 621] ; 24 Cal. Jur. 857, sec. 113; 10 Cal. Jur. Ten-year Supp. 710, sec. 113.)

The cases of *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086], and *Watkins* v. *Nutting,* (Cal. App.) [104 Pac. (2d) 413], upon which the appellants rely in support of their foregoing contention, may readily be distinguished from our conclusion that the challenged instruction does not constitute reversible error. In the White case it was said that

an instruction containing somewhat similar language to that which is criticised in this case was in accordance with the generally-acknowledged rule of law, but that "under the circumstances of this particular case" it should have contained the further condition that the plaintiff must be found to be free from negligence. In that case it does not appear the jury was elsewhere instructed, as it was in the present case, upon the subject of contributory negligence.

In the Watkins case, *supra*, it was also held to be error to give to the jury a similar instruction which omitted the element of plaintiff's freedom from negligence. In that case, however, it does not appear the jury was instructed upon the principle of contributory negligence anywhere in the charge. The opinion fails to mention what the general charge to the jury contained upon that subject. Moreover, a hearing of that case was granted by the Supreme Court, September 6, 1940, and the appeal has not been finally determined.

We have carefully examined each of the rejected instructions. We feel confident they were fully covered by other instructions which were given to the jury. There was, therefore, no error in rejecting any of the instructions offered by the appellants.

The appellants contend that the overruling of plaintiffs' motion for a new trial, conditioned on the defendants' consent in writing to an increase in damages of $1,000 over and above the amount awarded by the jury resulted in a denial of his constitutional right to a jury trial as provided by article I, section 7, of the Constitution of California. We think not, under the circumstances of this case. The defendants voluntarily waived their right to have the case again submitted to a jury, by signing and filing a written consent, as required by the Constitution and by section 631 of the Code of Civil Procedure, to an increase in the amount of the verdict. They were not compelled to sign that written consent. They had the option of standing on their constitutional right to a jury trial and appealing from the order of the court granting plaintiffs' motion for a new trial. They failed to exercise that privilege.

The facts upon which the amount of the judgment was conditionally increased are as follows: The plaintiffs demanded a jury trial. The jury rendered a verdict against the defendants and awarded the plaintiffs damages in the sum of $2,500. Plaintiffs moved for a new trial on the ground, among others,

that the evidence was insufficient to justify the verdict or the judgment. The court made an order that the motion for new trial would be granted on the grounds of insufficiency of the evidence and inadequacy of the judgment, unless the defendants filed their written consent to a modification of the judgment by increasing the amount thereof to the sum of $3,500 within ten days thereafter. That written consent was duly filed. The motion for new trial was then formally overruled. From the order increasing the amount of the judgment the defendants have appealed.

It is the established rule of the courts of this state and of other jurisdictions to uphold the authority of trial judges, under proper circumstances, to modify judgments on motions for new trials by either reducing or increasing the judgments to conform to the evidence, conditioned upon the written consent of the parties unfavorably affected thereby. (95 A. L. R. 1164, note; 53 A. L. R. 779, note.) We perceive no essential difference between allowing a trial judge to decrease the amount of damages awarded by a jury, to conform to the evidence, and increasing that amount, even though the case may involve unliquidated damages which appear to have been awarded through passion and prejudice or when it is clearly in conflict with the evidence. In either event the judgment must accord with the evidence adduced. It is true that either party who is prejudiced by such an order, so as to deprive him of the constitutional privilege of submitting his cause to a jury, may object to that procedure. But there are many decisions which hold that, when a person who is unfavorably affected by such a conditional order with respect to a motion for new trial, consents in writing thereto, he is not deprived of his constitutional right to have the amount of damages, which are assessed against him submitted to a jury, for he has thereby waived that right. In the present case the appellants consented to the increase of damages in the manner required by law, and they may therefore not complain.

▮ There is no doubt that a new trial may be granted, in the sound discretion of a trial judge, for insufficiency of the evidence to support a verdict or because it appears to have been rendered through passion or prejudice, when the amount of damages awarded is inadequate as well as when it is excessive. (*Secreto* v. *Carlander*, 35 Cal. App. (2d) 361 [95 Pac. (2d) 476]; *Reilley* v. *McIntire*, 29 Cal. App. (2d) 559

[85 Pac. (2d) 169] ; 20 Cal. Jur. 104, sec. 67; 20 R. C. L. 283, sec. 67; 46 C. J. 207, sec. 152.) In the Secreto case, *supra,* which is similar on principle to the present case, a motion granting a new trial was affirmed on appeal. A hearing by the Supreme Court was denied. It was there contended the trial court was without authority to grant or deny a new trial conditioned on the defendant accepting an increase by the trial judge of the amount of damages awarded by the jury. The opinion in that case contains the following statement:

"The law is established in this state that as a condition for denying a motion for a new trial the trial court has the power to require the opposing party to consent to an increase of the amount of the jury's verdict to bring the amount of the verdict in conformity with the evidence."

It is true that the trial court has no power *to compel* a party to consent to an increase of the amount of damages awarded by a jury. That would deny him his constitutional right to a jury trial. But the trial court has a right to grant or deny a motion for new trial upon grounds otherwise warranted by the record, conditioned upon the party unfavorably affected thereby consenting in writing to an acceptance of a specified increase or reduction of the amount of damages awarded by the jury. That is undoubtedly what the court meant by the foregoing language quoted from the Secreto case. The court is authorized to prescribe an alternative condition upon which the granting or denial of a motion for new trial may depend, provided the judgment which is rendered is supported by the evidence. The acceptance of the condition constitutes a waiver by the aggrieved party of his constitutional right to resubmit his cause to a jury. In the present case the appellants accepted in writing the suggested increase of damages and thereby waived their right to a jury.

The judgment is affirmed.

Pullen, P. J., concurred.

TUTTLE, J., Concurring.—I concur.

In respect to the question of the power of the trial court to increase the amount of the verdict upon proceedings for new trial, I am in accord with the conclusions reached thereon, but base my approval upon the sole ground that defendants, by consenting to such increase, waived their right thereafter to

raise the question. In the case of *Secreto* v. *Carlander*, 35 Cal. App. (2d) 361 [95 Pac. (2d) 476], (cited in the opinion), such a conditional order was made. Defendants failed to file a written consent and the new trial was granted. The latter, upon appeal, attacked the order upon the ground that the trial court was without power to make it. The court, in holding that such power existed, laid down a rule which, in my opinion, is directly opposed to the holding of the United States Supreme Court, in the late (1935) case of *Dimick* v. *Schiedt*, 293 U. S. 474 [55 Sup. Ct. 296, 79 L. Ed. 603, 95 A. L. R. 1150]. There, defendant accepted the terms of the conditional order for an increase in the amount of the verdict, but plaintiff did not. The latter then appealed, and attacked the order upon the ground that it infringed upon and violated his constitutional right to trial by jury. The court there said:

"Where the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages. Both are questions of fact. Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess,—in that sense that it has been found by the jury,—and that the *remittitur* has the effect of merely lopping off an excrescence. *But where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict.* When, therefore, the trial court here found that the damages awarded by the jury were so inadequate as to entitle plaintiff to a new trial, how can it be held, with any semblance of reason, that that court, with the consent of the defendant only, may, by assessing an additional amount of damages, bring the constitutional right of the plaintiff to a jury trial to an end in respect of a matter of fact which no jury has ever passed upon either explicitly or by implication? To so hold is obviously to compel the plaintiff to forego his constitutional right to the verdict of a jury and accept 'an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess.' "

From the wording of the above quotation, I believe that it is fairly susceptible of the construction that if the party who attacks the order has consented thereto, he is thereafter precluded from raising the question. It would seem that in this state we should adhere to the federal rule. It is true that the Seventh Amendment to the federal Constitution, guaranteeing trial by jury in civil cases, is not a limitation upon the states and does not affect state courts (11 Am. Jur., p. 1107, sec. 317), but our state Constitution contains a similar guarantee. (Art. I, sec. 7.)

Appellants' petition for a hearing by the Supreme Court was denied April 24, 1941.